### SEIBERT CYLINDER OIL-CUP CO. *v.* NEWARK LUBRICATOR MANUF'G CO. *et al.*

*Circuit Court, D. New Jersey.*   July 5, 1888.)

**1. PATENTS FOR INVENTIONS—ANTICIPATION—LUBRICATORS.**

The patent granted September 20, 1870, to John Gates, for a lubricator, in which the amount of oil supplied to the machinery can be estimated by observation of drops of water falling through the lubricating oil in a glass cylinder, and thus filling the bottom of that cylinder, or one underneath it, and causing the oil to be displaced and to pass out of an escape-pipe above by which it is carried to the engine, does not anticipate the patent granted April 29, 1873, to the same person, for an improved lubricator, by which the drops of oil, in passing to the escape-pipe, are made to pass upward through a glass cylinder filled with water, whereby the amount supplied to the engine can be observed by the engineer.

**2. SAME—PRIOR USE.**

Where the defense of two years' prior use is not set up by answer in a suit for infringement of patent, and the evidence shows that the patent was issued April 29, 1873, upon an application filed August 23, 1872; that the patentee commenced making drawings during the fall of 1870, and worked at it, as he had time, until they were in the shape of the one patented in 1873; and that the drawings were finished and the pattern made during the fall of 1870, and the lubricator completed during the winter and spring of 1871, so that it was put on the steamer which commenced to run in the fall of 1871,—such defense does not arise upon the evidence, and an application to amend the answer for the purpose of taking the point will be refused.

**3. SAME—INFRINGEMENT.**

The patent granted April 29, 1873, to John Gates, for an improved lubricator, by which the drops of oil, in passing to the escape-pipe, are made to pass upward through a glass cylinder filled with water, whereby the amount supplied to the engine can be observed by the engineer, is infringed by the patent granted May 19, 1885, to Charles Couse, which includes an apparatus for forcing the oil upward through a small aperture or passage, and a nipple-shaped valve provided with a needle to concentrate the drops of oil, which thence pass into a glass cylinder filled with water, through which the oil rises in drops exposed to view, up to the place of escape, whence it passes to the machinery to be lubricated.

In Equity.   Bill for infringement of letters patent.   Final hearing on bill, etc.

*Wetmore & Jenner*, for complainant.

*John Dane, Jr.*, and *A. Z. Keasbey*, for defendants.

Before BRADLEY, Justice, and NIXON, J.

BRADLEY, Justice. There are two questions in this case on which its decision depends—*First*, whether the patent sued on (which was granted to John Gates, of Portland, Or., April 29, 1873) was anticipated by a prior patent granted to the said Gates September 20, 1870; and, *secondly*, if not, whether the defendants infringe the patent of 1873.

By a careful comparison of the two patents granted to Gates, we are satisfied that they are for different inventions. The first, granted in 1870, is for a lubricator adapted to use on a steam-engine, in which the amount of oil supplied to the machinery can be estimated by observation of drops of water falling through the lubricating oil in a glass cylinder, and thus filling the bottom of that cylinder, or one underneath it, and causing the oil to be displaced, and to pass out of an escape-pipe above, by which it is carried to the engine. The dropping of the water is regulated by a cock which can be managed by the hand. The other patent, granted in 1873, is for an improved lubricator, by which the drops of oil, in passing to the escape-pipe, are made to pass upward through a glass cylinder filled with water, whereby the amount supplied to the engine can be observed by the engineer, and regulated by a supply-cock managed by the hand. This distinctive feature of the two patents is manifest by comparison; and in our judgment, the patent of 1870 does not contain any description or statement which would suggest the invention claimed in the patent of 1873. The patent of 1870 describes two methods of operation; one, by feeding into the lubricator drops of water from above, which descend through the oil in the glass cylinder, as stated above, and are open to the inspection of the engineer; the other, by injecting jets of water into the bottom of the lubricator, and causing the oil above to rise in proportion to the amount of water thus injected. In the latter method, the amount of oil expelled is not subject to observation, as in the former. It is the adaptation of the machine to the former operation which is the subject of the patent. The claim of the patent of 1870 is as follows:

"Having thus described my invention, I claim as new, and desire to secure by letters patent: The hollow glass cylinder, A, vessel, B, tube, D′, and pipes, F, K, all constructed and relatively arranged as shown in Fig. 1 of the drawings and for the purpose specified."

The parts referred to in this claim are as follows:

"A is the glass cylinder containing the oil, through which the drops of water fall; B is a vessel underneath A, holding oil, or oil and water, and communicating with A by two apertures in the bottom of A, which forms the top of B; the tube, D′, passes down through the center of A into the top of B, for introducing the oil; the pipe, K, enters the top of A, and admits the drops of water, which feed the machine; the pipe, F, is the escape-pipe, which leaves the top of A, and discharges the oil to the machinery to be lubricated."

The patent of 1873 describes a lubricator arranged on an entirely different plan, adapted to keep and hold a body of water in an upper glass cylinder, and to allow drops of oil to ascend into it from below and to rise through it to the escape-pipe at the top. The arrangement by which

this is done is to have a lower cylinder filled with oil, or oil and water, in which, of course, the oil will occupy the upper part, and an upper cylinder of glass filled with water, and to have the two connected by a "small passage" perforating a metallic standard between them, the passage being so small that when it is filled with oil from below, the water will not force its way downward into the lower cylinder.   To aid this obstruction to the descent of the water a small nipple is placed at the top of the passage, projecting upward a little way into the water, which also, no doubt, causes the oil, in being forced upward, to form in more regular globules or drops.   Water is then introduced into the lower cylinder by a series of drops, causing the superincumbent oil to rise, and press itself, drop by drop, through the small passage, and the nipple at its top, from whence it rises in drops, easily seen, through the water in the upper cylinder, and escapes by the pipe provided for that purpose.   The first two claims of the second patent are as follows:

"Having thus fully described my invention, what I claim as new, and desire to secure by letters patent, is (1) The described method of feeding oil, consisting in delivering the oil from the reservoir up through a body of water inclosed in a glass chamber, and discharging the same through the feed-cocks, substantially as described.   (2) The combination of an oil chamber with a water chamber, the latter being located over the former, and adapted to receive oil from it, and deliver the same above the body of water inclosed in it, substantially as described."

These are the only claims which are drawn in question in the case.   It is apparent that the method used under the patent of 1873, and the arrangement of the apparatus and materials, are essentially different from those employed under the patent of 1870.   In the one case the oil is placed above the water, in the glass cylinder, and the drops of water descend through it; in the other, water is placed above the oil, in the glass cylinder, and the drops of oil are made to ascend through it.   This change of operation is effected by a change in the machinery and the method of using it, and the result is a much clearer view of the movement of the material used.

Gates, the patentee, was examined as a witness in the case, and made this distinction between the two patents.   He said:

"I applied for the patent for the drop-feed, as it was used on the steamer Cascade, in the spring of 1870, and the patent was issued September 20, 1870, for the sight-feed lubricator, showing the water dropping down through oil."

As to the origin of the second invention, he said:

"I found that there was some difficulty with some oil in adhering to the glass, so that the water dropping down through the oil could not be seen so readily as desirable.   Some time in the summer of 1870 I conceived the idea of having the oil ascend up through the water in the glass, and I then put a nipple into the bottom of the right-hand glass, [he had two glasses on his first apparatus,] and, by filling the water-pipe with oil and the glass with water, there was no trouble in feeding oil through the glass, and observing the oil ascend in globules through the water in the glass as it went on its way to the steam-cylinder."

This was his first experiment on the lubricator which is described and claimed in his second patent. He then says:

"I commenced making drawings during the fall of 1870, and worked at it, as I had time, until I had them in the shape of the one patented by me in 1873."

Again he says:

"I got my drawings finished as soon as I could, and had the pattern made during the fall of 1870, and had the lubricator completed during the winter and spring of 1871, so that it was put on the steamer Emma Hayward, which was building, and commenced to run early in the fall of 1871."

This evidence shows, not only the clear distinction between the first invention, patented in 1870, and the second, patented in 1873, but also answers another objection started by the defendants, namely, that the second was in public use more than two years before the application for a patent. The application was filed August 23, 1872, and the invention had been in actual use but one year. The experiment made on the steamer Cascade in the summer or fall of 1870 was a mere experiment, which satisfied the patentee that a new and improved lubricator could be made, and he proceeded to make his drawings and models accordingly. But there was no such use of the invention as could preclude him from getting a valid patent upon his application made in August, 1872. Indeed, it is not clear that even this experiment was made more than two years before that time. It is true that the defense of two years' prior use was not set up in the answer; but the counsel of the defendants thinks that it arises upon the evidence, and applies for leave to amend the answer for the purpose of taking the point. We are averse to allowing new issues to be made on the final hearing; but think that the evidence would not sustain any such defense if the amendment were made.

On the question of infringement we have no difficulty. The defendants are making lubricators under the patent of the defendant Charles Couse, dated May 19, 1885. We have carefully examined that patent, as well as a model of one of the defendant's machines, and do not see how it can be doubted for a moment that it infringes the patent of 1873. It probably has great improvements; but it includes an apparatus for forcing the oil upward through a small aperture, or passage, and a nipple-shaped valve, provided with a needle to concentrate the drops of oil, which thence pass into a glass cylinder filled with water, through which the oil rises in drops exposed to view, up to the place of escape, whence it passes to the machinery to be lubricated. The apparatus performs not only the precise office which is performed by Gates' lubricator, but, so far as the operation in question is concerned, performs it by machinery substantially the same as Gates'. The method of operation is precisely the same. The defendant's lubricator, and its method of operation, are within the very terms of the first and second claims of the patent of 1873. The complainant is entitled to a decree as prayed in the bill.